## STATEMENT OF FACTS

Your affiant, Robin Helbock, is a Special Agent assigned to the Department of State's Office of Inspector General (OIG). I am assigned to investigate various criminal matters throughout the world. As a Special Agent with the Department of State OIG, I am authorized to investigate crimes committed against the Department of State, the U.S. Agency for Global Media (USAGM), and the International Boundary and Water Commission stated under federal law, including Title 18 of the United States Code. Currently, I am tasked with investigating a procurement fraud scheme committed against the Department of State, USAGM, and several other federal agencies. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of violations of Federal criminal laws.

The facts and information contained in this Affidavit are based on my personal knowledge and observations, information provided to me by others involved in the investigation, and a review of documents and records. This Affidavit does not contain each and every fact known to the government. It contains only those facts I believe are necessary to support a finding of probable cause that AYOMIDE FETUGA, a citizen of Nigeria and resident of Texas, committed the following offenses: Wire Fraud, and Conspiracy To Commit Wire Fraud and Mail Fraud, in violation of 18 U.S.C. §§ 1343 and 1349.

Beginning in or about September 2021, the official government email account of the USAGM Senior Procurement Executive (EMPLOYEE 1) was accessed without authorization by an unknown intruder, who changed the "Reply To" field within the header data of the email to a private email address corresponding to an email domain which closely resembled the official USAGM domain and appeared to have been created for the sole purpose of executing the fraud scheme described in this Affidavit. EMPLOYEE 1's office is located in Washington, D.C., where USAGM is headquartered. EMPLOYEE 1's email account was then used without his knowledge or authorization to send at least hundreds of fraudulent emails containing requests for quotations to numerous government vendors. A request for quotation is an invitation for a vendor to provide a proposed price to sell specified goods to the customer (in this case, to USAGM). It is unknown how the list of government vendors was obtained. As described below, the object of the scheme was to defraud vendors into shipping goods to members of the conspiracy without payment, while deceiving the vendors into believing they were shipping goods to USAGM and would receive payment from USAGM.

One of the recipients of the fraudulent emails sent from EMPLOYEE 1's account was a company (COMPANY A) located in New York City, New York. The request for quotation contained in the fraudulent email requested 38 Surface Pro computers. An undercover law enforcement agent posing as a representative of COMPANY A sent a quote via email using the "Reply To" function. The undercover law enforcement agent called the unknown fraudster posing as EMPLOYEE 1 who requested the items be shipped to a specific individual (PERSON 1) at a store in West Mifflin, Pennsylvania. The undercover agent provided a U.S. Postal Service tracking number to the fraudster posing as EMPLOYEE 1. Postal records indicate that the tracking number corresponding to the above-referenced shipment was tracked at least 48 times from various locations, including numerous times from an Internet Protocol (IP) address associated with a

location in Lagos, Nigeria.  During these communications, the undercover agent sent emails to the unknown fraudster posing as EMPLOYEE 1 from a location in Washington, D.C.

Law enforcement agents conducted a controlled delivery of the package shipped via the U.S. Postal Service to West Mifflin, Pennsylvania.  The package was accepted for delivery by PERSON 1.  Law enforcement conducted a voluntary interview of PERSON 1, who stated that he was directed by a female associate he met online to receive the package and then ship it to AYOMIDE FETUGA, at an address for an apartment in Garland, Texas.

Law enforcement agents conducted a second controlled delivery of the package shipped via the U.S. Postal Service to AYOMIDE FETUGA, at the address provided by PERSON 1 for an apartment in Garland, Texas. The package was left on the doorstep of the specified address. AYOMIDE FETUGA was observed opening the door to retrieve the package, and he relocated it inside the apartment in his bedroom. Law enforcement agents then knocked on the door and indicated they would like to speak with AYOMIDE FETUGA about the package. AYOMIDE FETUGA immediately stated he was not surprised law enforcement was there. AYOMIDE FETUGA said he knew the computers in the package were "stolen" and he knew the package was going to be an issue.

### *Interview with AYOMIDE FETUGA*

Law enforcement conducted a voluntary interview with AYOMIDE FETUGA.  He confirmed his name and provided law enforcement with his Nigerian passport.  AYOMIDE FETUGA told law enforcement agents that a high school friend from Nigeria (CO-CONSPIRATOR 1) contacted him and requested that AYOMIDE FETUGA receive a package containing computers on CO-CONSPIRATOR 1's behalf and then ship them to CO-CONSPIRATOR 1 in Lagos, Nigeria. AYOMIDE FETUGA claimed that he asked CO-CONSPIRATOR 1 if the computers were stolen and CO-CONSPIRATOR 1 said no. CO-CONSPIRATOR 1 provided AYOMIDE FETUGA with the tracking information for the package being sent from West Mifflin, Pennsylvania to AYOMIDE FETUGA's address in Garland, Texas, which AYOMIDE FETUGA said he tracked twice from his phone. When AYOMIDE FETUGA explained to CO-CONSPIRATOR 1 that he did not have the money to ship the computers to Nigeria, CO-CONSPIRATOR 1 directed AYOMIDE FETUGA to sell two of the computers. CO-CONSPIRATOR 1 told AYOMIDE FETUGA he could split the profit of one computer 50/50 with CO-CONSPIRATOR 1 and use the money from the sale of the second computer to ship the remaining computers to CO-CONSPIRATOR 1 in Lagos, Nigeria. AYOMIDE FETUGA said he intended to use a local shipping company he frequently used for other shipments to ship the computers to CO-CONSPIRATOR 1.

AYOMIDE FETUGA said that, at approximately the same time law enforcement arrived at his apartment, CO-CONSPIRATOR 1 sent AYOMIDE FETUGA a voice message via WhatsApp. AYOMIDE FETUGA said CO-CONSPIRATOR 1 sent him numerous messages, mostly via WhatsApp, about the package since it was shipped, including that day. AYOMIDE FETUGA told law enforcement he was supposed to record a video of himself opening the package as proof he received it and send the video to CO-CONSPIRATOR 1. AYOMIDE FETUGA said

this was the first and only time he was supposed to receive a package on behalf of CO-CONSPIRATOR 1.

AYOMIDE FETUGA admitted to law enforcement that he had also previously agreed to assist CO-CONSPIRATOR 1 with a bank fraud, but he became uncomfortable and did not go through with the transaction. Specifically, approximately two months ago, CO-CONSPIRATOR 1 contacted AYOMIDE FETUGA with a proposal that AYOMIDE FETUGA accept a deposit of $60,000 into his personal bank account via CashApp and then transfer the money to CO-CONSPIRATOR 1. CO-CONSPIRATOR 1 told AYOMIDE FETUGA that in exchange for completing the transaction, AYOMIDE FETUGA could keep 20% of the $60,000 deposit. However, CO-CONSPIRATOR 1 requested AYOMIDE FETUGA's login (username and password) information for his CashApp and bank accounts. AYOMIDE FETUGA was uncomfortable providing his login information and declined CO-CONSPIRATOR 1's offer. AYOMIDE FETUGA did not know the original source of the $60,000. AYOMIDE FETUGA said he never knows the source of the funds in these types of arrangements, but it is "obvious" that it is related to scams or fraud. That was one reason that led AYOMIDE FETUGA to believe the computer package shipment was "sketchy."

Based on the foregoing, your affiant submits that there is probable cause to believe that AYOMIDE FETUGA committed Wire Fraud, in violation of 18 U.S.C. § 1343, which makes it a crime in relevant part devise or intend to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and transmit or cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice; and Conspiracy To Commit Wire Fraud and Mail Fraud, in violation of 18 U.S.C. § 1349, which makes it a crime in relevant part to attempt or to conspire to commit Wire Fraud or Mail Fraud.

_____
SA Robin Helbock
Department of State
Office of Inspector General

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 20th day of December 2021.

_____
ROBIN M. MERIWEATHER
U.S. MAGISTRATE JUDGE

3